S. M. Flickinger Co., Inc., Respondent, v 18 Genesee Corporation et al., Appellants.

Fourth Department, December 14, 1979

*De Vaul, Wood & Myers (Philip C. Wood* of counsel), for appellants.

*Hiscock, Lee, Rogers, Henley & Barclay (George S. Deptula* of counsel), for respondent.

### OPINION OF THE COURT

SIMONS, J. P.

On August 30, 1976 plaintiff entered into a "Super Duper Finance Agreement" with the corporate defendant, 18 Genesee Corporation, and the individual defendants, its stockholders. By its terms, plaintiff subleased store premises to 18 Genesee Corporation to operate a Super Duper food market franchise and it agreed to loan the corporation $230,000 to finance the operation. The corporation executed a note for that amount and the individual stockholders guaranteed it. The corporation also executed a security agreement covering inventory and fixtures.

On March 28, 1978 plaintiff wrote to the defendants that the corporation was in default and that by its letter it was giving 30 days' notice of termination as the agreement required. In the alternative, plaintiff suggested that it would mitigate against further losses to defendants by immediately taking possession of the store, the fixtures and the inventory. The inventory was to be "taken at the existing retail prices and adjusted to cost by deducting 15% thereof. Meat and produce inventory will be taken at cost using S.M. Flickinger's existing cost figures." Plaintiff asked defendants to sign the letter and return it if they agreed to plaintiff's proposal for immediate possession. All defendants signed the letter and plaintiff took possession of the store, inventory and fixtures.

It then initiated this action seeking summary judgment on the note. Defendants opposed the motion and moved to dismiss the proceeding contending that the proceeding to collect the debt was regulated by the provisions of the Uniform Commercial Code, that plaintiff had failed to comply with the provi-

sions of section 9-504 of that statute in taking possession of the collateral and that therefore plaintiff had forfeited its rights to any deficiency judgment.

Special Term held that the obligation on the note and guarantee were independent of any condition in the Super Duper finance agreement. It granted plaintiff judgment for $177,554.79 plus interest and it denied defendants' cross motion to dismiss the action. We are unanimous in holding that the provisions of the Uniform Commercial Code apply and that there must be a reversal. We differ only in our interpretation as to what the statute requires before plaintiff may recover a deficiency judgment.

A secured party in plaintiff's position may ignore its statutory right to take possession of collateral property after default (see Uniform Commercial Code, § 9-503) and may instead seek a judgment on the debt itself. If it does so, the execution of the judgment and levy on the property owned by the debtor, including collateral listed in the security agreement, are not governed by the default provisions of article 9 (see Official Comment 6, Uniform Commercial Code, § 9-501; *Bilar, Inc. v Sherman,* 572 P2d 489 [Col]). Where, however, the secured party exercises its right to take possession of the collateral upon default, as plaintiff did by its letter of March 28, 1978, it must conform to the requirements of article 9 (see *Security Trust Co. of Rochester v Thomas,* 59 AD2d 242; *Roebuck v Walker-Thomas Furniture Co.,* 310 A2d 845 [DC]).

A majority of the court believe that the parties' rights must be determined by applying section 9-504 of the Uniform Commercial Code; the minority would apply section 9-505 and permit a jury trial on whether the corporate debtor waived the provisions of that section.[1] There are no reported cases in New York deciding the issue.[2]

Section 9-504 provides that after the debtor defaults on a debt a secured party may sell, lease or otherwise dispose of any collateral in the manner provided in the statute and the debtor shall be liable for the deficiency, if any. The disposition may be "by public or private proceedings", but every aspect of

---

1. The dissenters would hold that the unconditional guarantors are obligated to pay the debt in any event, the only issue being the amount of the deficiency judgment.

2. *Northern Fin. Corp. v Chatwood Coffee Shop* (NY Supreme Ct, NUNEZ, J.), reported at 4 UCC Reporting Service (p 674) holds that where a creditor retains collateral without a sale, there is a triable issue of whether the property was retained in full satisfaction of the debt.

it must be "commercially reasonable" (Uniform Commercial Code, § 9-504, subd [3]). In this case all defendants, maker and guarantors, executed the letter of March 28 consenting to plaintiff's proposal to retake the collateral and, as to the inventory, they consented to plaintiff's suggested method of disposition. Not only was it within their power to set the standards by which their rights and duties were to be measured (see Uniform Commercial Code, § 9-501, subd [3]), but it was reasonable that they do so when dealing with food commodities, many of them perishable. Having accepted the terms in the March 28 letter, defendants may not now complain about the method of disposition or value placed on the inventory. The only issue is whether plaintiff credited this inventory value against the debt when making their claim.

The fixtures are another matter. Plaintiff's March 28 letter contained no proposal for their disposition and defendants' consent extended no further than agreeing to possession. Plaintiff has failed to comply with the provisions of section 9-504, which require that after taking, the collateral shall be disposed of in a commercially reasonable manner after notice to the debtor. This failure to comply does not deprive plaintiff of its deficiency judgment, but it must prove, at trial, the amount of the debt, the fair market value of the security and the resulting deficiency (Security Trust Co. of Rochester v Thomas, 59 AD2d 242, supra).

The dissenters take a different view. They hold, as have other jurisdictions, that section 9-505 applies. Since plaintiff failed to proceed as section 9-504 requires with notice to the debtor and sale after it took possession of the collateral, the minority believe that plaintiff must be held to have elected to take the collateral as full satisfaction of the debt, thereby forfeiting its claim against the corporate debtor unless a jury finds that it waived the provisions of section 9-505.

Subdivision (2) of section 9-505 provides in part: "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection." (Emphasis added.)

By its terms the statute makes the election to retain the collateral in full satisfaction and discharge of the debt optional with the creditor and it provides that the option is to be exercised by written notice to the debtor. There was no

communication between the parties to this action, however, which may be construed as an election by the creditor to take the collateral in full satisfaction of the debt, and an election should not be implied when the means for certainty are spelled out in the statute. The concern, of course, is that the creditor, having proceeded without notifying the debtor of his intention, may act to the debtor's disadvantage. But section 9-505 was not designed to protect the debtor from a wrongful sale (see *Jones v Morgan,* 58 Mich App 455). If the secured party fails to comply with the provisions of article 9, the debtor may protect his rights by the remedies available pursuant to section 9-507. He may restrain or compel disposition of the collateral, or if disposition has already occurred, he may charge the creditor with any loss occasioned by its unauthorized conduct. Neither the provisions nor the purposes of the code require that plaintiff forfeit its entire claim, however, and the code should not be interpreted to permit the uncertainty of a jury trial on that issue here.

The order insofar as it granted plaintiff's motion for summary judgment as to all defendants on the issue of liability only should be affirmed and the matter remitted to fix the amount of the debt due.

MOULE, J. (dissenting). On August 30, 1976 S. M. Flickinger Co., Inc. (Flickinger) loaned 18 Genesee Corporation (Genesee) $230,000 evidenced by a promissory note. In conjunction with the loan, the parties executed: (1) a security agreement covering all the equipment, fixtures and merchandise in a supermarket; (2) an unconditional guarantee of payment by the sole shareholders, the Doxtators and Hammonds; and (3) an agreement setting forth the rights and duties of the parties with regard to Genesee's operation of a Super Duper supermarket franchise.

When Genesee defaulted on the note, Flickinger notified it by letter dated March 28, 1978 that Flickinger was "prepared to mitigate against further losses by immediately taking possession of the inventory, fixtures and premises". Flickinger requested that Genesee and the individual guarantors assent to this plan by signing and returning a copy of the letter, which they did.

Pursuant to the letter plaintiff took possession of the collateral, apparently intending to purchase it from the defendant corporation. Section 9-504 sets forth the requirements for a

party to buy the collateral in which he has a security interest. He may do so where the collateral is being offered at a public sale or at a private sale if the collateral is of a type sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations (Uniform Commercial Code, § 9-504, subd [3]). Since there has been no public sale, and since the conditions necessary for conducting a private sale were not established, the acquisition by plaintiff of the collateral in the present case is not a sale or other disposition of collateral within the meaning of section 9-504.

The provisions of part 5 of article 9 should be construed strictly to protect the debtor's rights in collateral after default (see Official Comment 4, Uniform Commercial Code, § 9-501). The secured party's purchase of collateral presents a prime opportunity to take unfair advantage of the debtor's position upon default. The provisions of section 9-504 governing sale to the secured party should, therefore, be read to exclude such sales under circumstances not set forth therein.

Plaintiff's retention of the collateral subjected it to the provisions of section 9-505 (*National Equip. Rental v Priority Electronics Corp.,* 435 F Supp 236). This section allows the secured party to retain the collateral in full satisfaction of the obligation providing the debtor does not object to such retention (Uniform Commercial Code, § 9-505, subd [2]; see 1 Coogan-Hogan-Vagts, Secured Transactions under the Uniform Commercial Code, § 3A.04). The debtor may, however, waive or modify his right to have the obligation fully satisfied by the secured party's retention of the collateral, providing such waiver is by signed statement executed after default (Uniform Commercial Code, § 9-505, subd [2], as amd by L 1977, ch 866, § 35; see Coogan, The New UCC Article 9, 86 Harv L Rev 477, pp 520-524). If the debtor waives his right to full satisfaction, the secured party may then recover a deficiency judgment based upon the amount of the debt less the value of the collateral. If the debtor refuses to waive full satisfaction, the secured party has the choice of retaining the collateral in full satisfaction of the debt or selling it to a third party under the provisions of section 9-504.

Here, it is not clear that Genesee, by the letter of March 28, 1978, intended to waive its right under section 9-505 to have the debt fully satisfied by Flickinger's retention of the collateral. The letter is ambiguous. It speaks in terms of mitigation against losses, but does not specify how that is to be done; nor

does it include any provision with regard to the disposition of the store's fixtures.

Since whether the corporate debtor waived its rights under section 9-505 remains an issue of fact, we would reverse the order granting summary judgment as to that debtor.

HANCOCK, JR., and SCHNEPP, JJ., concur with SIMONS, J. P.; DOERR and MOULE, JJ., dissent in part and vote to deny plaintiff's motion for summary judgment as to corporate defendant in an opinion by MOULE, J.

Order, insofar as it granted plaintiff summary judgment affirmed, with costs, and matter remitted to Supreme Court, Onondaga County, for assessment of damages, in accordance with opinion by SIMONS, J. P.