**FARMERS STATE BANK IN AFTON,**
Oklahoma, a corporation, Appellee,

v.

**Robert E. BALLEW and Zelma L. Ballew, Appellants.**

No. 53044.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 24, 1981.

Released for Publication by Order of Court of Appeals March 26, 1981.

Robert E. Nesbitt, Miami, for appellee.

Steven M. Harris, Tulsa, for appellants.

BOX, Presiding Judge:

An appeal by the defendants below, Robert E. and Zelma Ballew, from a summary judgment entered for the plaintiff, Farmers State Bank in Afton, Oklahoma.

In June of 1977 the Ballews were in default on several promissory notes executed to the Bank. The Bank filed this action to recover on the notes and to foreclose its security agreements on collateral pledged to secure the notes. A few days later the Bank used self-help to repossess the collateral. The collateral consists of used cars, which were a part of the inventory of the Ballews' business.

Seventeen months after this action was filed, the trial court entered a summary judgment for the Bank. The court's order allowed the Bank recovery on all the notes. It also ordered the Bank's security agreements foreclosed, the collateral in the possession of the Bank sold, and granted a deficiency judgment in the event the proceeds of the sale did not satisfy the amount of the judgment.

The Ballews appeal from the granting of summary judgment for the Bank. A summary judgment is properly granted when the facts set forth in detail show no substantial controversy as to any material fact. *First Nat'l Bank & Trust Co. v. Nesbitt*, Okl., 598 P.2d 1197, 1199. However, if upon the facts presented, it is possible for reasonable men to reach different conclusions, then a summary judgment is improp-

er. *Gilmore v. St. Anthony Hosp.*, Okl., 598 P.2d 1200, 1202. The Ballews contend that the pleadings raised substantial controversy as to material facts; therefore, the trial court erred in granting summary judgment. They ask this Court to remand the case for a trial on the issues.

The assertions of error on appeal revolve around the propriety of the Bank's actions with regard to the collateral in its possession. The parties agree that Article 9 of the Uniform Commercial Code, 12A O.S. 1971, §§ 9–101 to 9–507 (hereinafter cited by U.C.C. section number only), is controlling on the issues presented.

The facts clearly show that the Bank is a secured party, and that the Ballews are in default under the terms of the notes and security agreements. Part 5 of Article 9 provides the rights and remedies of the parties to a security agreement when the debtor is in default. The secured party may exercise any rights or remedies provided by: (1) the security agreement itself (as limited by § 9–501(3)); (2) the provisions of Part 5; and (3) any other applicable state law. § 9–501(1).

■ Section 9–501(1) provides that the rights and remedies are cumulative. Other jurisdictions have found that this provision allows the secured party to pursue any and all remedies against the debtor until the debt is satisfied without danger of any of his actions constituting an irrevocable election of remedies. *McCullough v. Mobileland, Inc.*, 139 Ga.App. 260, 228 S.E.2d 146, 148 (1976); *Michigan Nat'l Bank v. Marston*, 29 Mich.App. 99, 185 N.W.2d 47, 50 (1970); *Ruidosa State Bank v. Garcia*, 92 N.M. 288, 587 P.2d 435, 436–37 (1978); *Food City, Inc. v. Fleming Cos.*, 590 S.W.2d 754, 759 (Tex.Civ.App.1979); *Kennedy v. Bank of Ephraim*, 594 P.2d 881, 884 (Utah 1979); *Peoples Nat'l Bank v. Peterson*, 7 Wash. App. 196, 498 P.2d 884, 885–6 (1972). Oklahoma has impliedly so held. *O'Dell v. Kunkel's Inc.*, 581 P.2d 878, 881.

However, the fact that the remedies are cumulative does not mean they can be applied simultaneously. In J. White & B. Summers, Uniform Commercial Code § 26–4, at 1093–94 (2d ed. 1980) it is stated:

Moreover 9–501(1) also provides that: "The rights and remedies referred to in this subsection are cumulative." The remedies may be "cumulative," but at some point the secured creditor must choose which remedy he will utilize and pursue that route to fruition. In other words, a secured creditor may first attempt to enforce his rights by one method and if that proves unsuccessful follow another one, but he should not be permitted to harass the debtor by simultaneously pursuing two or more of the several avenues of attack open to him. Neither case law nor the language of 9–501 authorizes a "double-barreled" attack upon the debtor. [Footnotes omitted.]

■ Under the facts of the present case and the provisions of Part 5 of Article 9, the Bank, as a secured party, had the right under the security agreements to repossess. Section 9–503 also allows repossession by judicial process or by self-help. The secured party may also seek judgment on the debt itself. § 9–501(1). If the secured party seeks judgment on the debt, the execution of the judgment and levy on the debtor's property are not governed by Article 9. § 9–501, Comment 6. But if the secured party exercises its statutory right of repossession, it must comply with the requirements of Part 5 of Article 9. *Roebuck v. Walker-Thomas Furniture Co.*, 310 A.2d 845, 848 n. 9 (D.C.App.1979); *Spillers v. First Nat'l Bank*, 81 Ill.App.3d 199, 36 Ill. Dec. 477, 479, 400 N.E.2d 1057, 1059 (1980); *S. M. Flickenger Co. v. 18 Genesee Corp.*, 71 A.D.2d 382, 423 N.Y.S.2d 73, 75 (1979).

■ The secured party has two alternatives if he exercises his statutory right to repossess provided by section 9–503. *In re Copeland*, 531 F.2d 1195, 1206 (3d Cir. 1976); *National Equip. Rental v. Priority Electronics*, 435 F.Supp. 236, 239 (E.D.N.Y.1977). He "may sell, lease or otherwise dispose of any or all collateral." § 9–504(1). Such disposition must be "commercially reasonable." § 9–504(3); *Wilkerson Motor Co. v. Johnson*, Okl., 580 P.2d 505, 507. The con-

cept of commercial reasonableness extends to every aspect of the disposition and specifically includes method, manner, time, place, and terms. § 9–504, Comment 6.

In the alternative, the secured party may elect to retain the collateral in full satisfaction of the debt. § 9–505. If the secured party so elects, he must give written notice of his intent to the debtor. The debtor can object within 30 days of receiving the notification; and if he does, the secured party must dispose of the collateral in compliance with section 9–504. § 9–505(2).

■ In this case the secured party filed an action on the debt and shortly thereafter repossessed the collateral listed in the security without judicial process. Clearly, he had a right to do either or both under section 9–501(1). This does not mean, however, that the secured party had no duties with respect to the collateral. Once the Bank took possession of the collateral it had to "use reasonable care in the custody and preservation of the collateral." § 9–207(1). The word preservation has been held to include preservation of value. *Reed v. Central Nat'l Bank*, 421 F.2d 113, 116 (10th Cir. 1970). *But see Dubman v. North Shore Bank*, 85 Wis.2d 819, 271 N.W.2d 148, 151 (Ct.App.1978). The secured party is liable to the debtor for any loss occasioned by his failure to comply with this requirement. § 9–207(3). The requirement exists whether the secured party has possession of collateral before or after default. § 9–207, Comment 4. Additionally, every duty or contract coming within the provisions of the U.C.C. carries with it an obligation of good faith in its performance. 12A O.S.1971, § 1–203.

In *Michigan Nat'l Bank .v. Marston*, 29 Mich.App. 99, 185 N.W.2d 47 (1970), the debtor argued that before the secured party could seek a deficiency judgment, he had to dispose of the collateral he had repossessed. The court stated that the code intent "was to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies." 185 N.W.2d at 51. The court further stated that although the secured party was under no obligation to dispose of the collateral once he took possession under section 9–503, he was subject to certain duties under sections 9–207, 9–504, and 9–505(2). It stated:

It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition. If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery.

185 N.W.2d at 51 (citations omitted): *Accord, Henderson Few & Co. v. Rollins Manufacturing, Inc.*, 148 Ga.App. 139, 250 S.E.2d 830, 832 (1978).

■ We find the reasoning of the Michigan Appeals Court to be persuasive and adopt it. The secured party is not required to elect one remedy to the exclusion of all others. He may pursue one, then another. It is even possible that he could pursue more than one at the same time, if all his actions could be considered reasonable and not violative of Part 5 of Article 9 or other applicable law. But if his actions result in impairment of the collateral, he will be liable to the debtor for the damages incurred. Once he has possession of the collateral his actions with regard to it must be reasonable in all respects. By accepting this rationale we do not imply that the actions of the Bank were unreasonable. We only find that whether or not its actions were or were not reasonable is a question of

fact to be determined by the trier of fact. We therefore reverse the granting of summary judgment on this issue. To uphold the summary judgment would require a finding that a secured party's retention of collateral for a period of at least 17 months, without any type of action being taken with respect to the collateral, is reasonable as a matter of law. This determination is a fact issue in dispute, and the parties should be allowed to go to the trier of fact with their evidence.

We find further support for our decision in other jurisdictions. In *Moran v. Holman*, 514 P.2d 817, 819-20 (Alaska 1973), the secured party used self-help to repossess collateral and used it for four months. He then brought suit against the debtor on the full amount of the debt. The suit was not tried for 25 months during which the secured party retained the collateral without offering to return it or to dispose of it. The court held that under proper circumstances a secured party may retain possession of collateral and still sue on the obligation. When, however, he retains collateral which depreciates in value, the debtor may validly claim his obligation is satisfied, even without written notice, under section 9–505(2). In *Schultz v. Delaware Trust Co.*, 360 A.2d 576, 578 (Del.Super.Ct.1976), the court found that whether retention of collateral for a period of five years without disposition or return to the debtor is reasonable was a question of fact precluding summary judgment on that issue. In *Mack Financial Corp. v. Scott*, 100 Idaho 889, 606 P.2d 993, 997 (1980), the Idaho Supreme Court affirmed the decision of the trial court, which held that an unexplained delay of two years between repossession of the collateral and its sale at public auction constituted an unreasonable disposition of the collateral in violation of section 9–504(3). In *Haufler v. Ardinger*, 28 U.C.C.Rep.Ser. 893, 896 (Mass.App.1979), the court found that a secured party, who took possession of collateral upon the debtor's default, used it in his own business for 38 months, then sold it, had unequivocally elected to retain the collateral in satisfaction of the debt. *See also* § 9–504, Comment 6.

This case must be remanded for trial to determine whether the Bank's actions with respect to the collateral were reasonable. We note that the record before us shows that the Bank, pursuant to the judgment appealed, conducted a sheriff's sale and made motion for a deficiency judgment. The deficiency judgment was allowed. The secured party may or may not be entitled to a deficiency judgment depending on the outcome of the new trial. On this issue we call the trial court's attention to two recent Oklahoma Supreme Court decisions. *Beneficial Finance Co. v. Young*, 612 P.2d 1357; *Davidson v. First Nat'l Bank & Trust Co.*, 609 P.2d 1259.

We remand this case to the trial court with instructions to set aside the summary judgment in favor of the Bank and to proceed to trial, consistent with the views set out herein.

REVERSED AND REMANDED WITH INSTRUCTIONS.

WILSON and REYNOLDS, JJ., concur.